**BACHE HALSEY STUART SHIELDS INCORPORATED, Plaintiff and Cross-Defendant,**

v.

**Mark H. GUEST and Rick Underwood, Defendants and Cross-Complainants.**

**No. CV 82–4237–AAH(Kx).**

United States District Court, C.D. California.

Jan. 28, 1985.

**40**

Michael M. Gless, Keesal, Young & Logan, Professional Corp., Long Beach, Cal., for plaintiff and cross-defendant.

Michael T. Kenney, Santa Ana, Cal., for defendants and cross-complainants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAUK, District Judge.

Pursuant to *Federal Rule of Civil Procedure* 52, the Court makes the following Findings of Fact and Conclusions of Law, having considered Defendants' Objections filed 1/23/85 and Plaintiff's Reply filed 1/25/85, and having made certain Amendments pursuant thereto:

## FINDINGS OF FACT

1. Plaintiff, BACHE HALSEY STUART SHIELDS INCORPORATED, is a Delaware corporation engaged in the general securities brokerage business, a registered broker-dealer with the SEC, a member of the New York Stock Exchange and the Commodity Futures Trading Commission, and is doing business in California.

2. Defendants MARK H. GUEST and RICK UNDERWOOD are residents of the County of Orange, State of California.

3. On July 15, 1982, defendants opened a joint commodity account, No. PH–01289, with the Pasadena office of plaintiff through its employee and account executive Bruce P. Gustafson. Both defendants represented they were experienced in the commodity area and had an investment ob-jective of speculation. Mr. Gustafson was only to act as an order taker.

4. Defendants entered into a written agreement with plaintiff that they would maintain sufficient margin and would pay on demand any debit balance owing in their account.

5. At the time the account was opened, Mr. GUEST indicated he had an annual income of $75,000 and a net worth of $100,-000. Mr. UNDERWOOD indicated that he had an annual income of $75,000 and a net worth of $150,000.

6. It was not defendants' intent at any time to have a free play of the market.

7. On July 18, 1982, Mr. GUEST delivered to BACHE his $5,000 check dated July 18, 1982. The check was returned to BACHE July 28, 1982 by Mr. GUEST'S bank marked "Not Sufficient Funds." This check was resubmitted by BACHE to defendant's bank and was returned marked "Payment Stopped." On July 21, 1982, Mr. UNDERWOOD delivered his check for $6,000 to BACHE dated July 21, 1982. This check was returned to BACHE by Mr. UNDERWOOD'S bank on July 30, 1982, marked "Payment Stopped," after which date, neither GUEST nor UNDERWOOD ever deposited good funds in their account at Bache to pay for any of the trades they placed because of their claimed disagreement with plaintiff.

8. During the period July 20, 1982 through July 23, 1982, defendants placed numerous unsolicited orders in their account to buy and sell silver futures contracts.

9. As of 10 a.m. on July 22, 1982, defendants held in their account ten contracts of silver short. At 10:06 a.m., defendants placed an order to short (sell) an additional ten contracts of silver if silver reached the specific price of $7.03. At 10:19 a.m., defendants placed an unsolicited order to buy twenty contracts of silver if silver dropped to the specific price of $6.85 without verifying that their 10:06 a.m. order to sell had been filled in its entirety.

10. During a telephone conversation at approximately 10:45 a.m., on July 22, 1982, Mr. Gustafson advised the defendants that Bache's managing floor broker had acknowledged that a recording and reporting error had been made with respect to the defendants' 10:06 a.m. order of that date and that, in fact, the 10:06 a.m. order had been filled by the Exchange for only nine of the ten contracts at the $7.03 price specified by defendants.

11. During the 10:45 a.m. telephone conversation, Mr. Gustafson confirmed to the defendants they now held nineteen contracts short and that the Exchange had not been able to fill their order to buy twenty contracts at $6.85 because the price of silver had not dropped to that price.

12. During the 10:45 a.m. telephone conversation, defendants were advised by Mr. Gustafson that if they felt the price of silver was going to continue to rise rather than decline, they should place an order to liquidate all of the nineteen contracts.

13. On July 22, 1982, defendants placed orders at their own designated prices by entering a series of limit orders, none of which were ever filled. The limit orders entered by defendants were as follows:

1. 11:03 a.m.—buy 19 contracts at $6.95 and cancel order to buy 20 contracts at $6.85;

2. 11:07 a.m.—buy 19 contracts at $6.98 and cancel order to buy 19 at $6.85; and

3. 11:15 a.m.—buy 19 contracts at $7.00 and cancel order to buy 19 at $6.98.

14. On July 22, 1982, the price of silver fluctuated from a low of $6.90 to a high of $7.06.

15. BACHE had the right and authority to liquidate defendants' positions pursuant to the terms of the customer's agreement executed by defendants on July 15, 1982 and being Exhibit E in this case.

16. Both the plaintiff and the defendants could have liquidated the silver positions in the account prior to the close of trading on July 22 and prevented any further losses from being incurred on July 23.

17. If either the plaintiff or the defendants had liquidated defendants' silver position on July 22, 1982 at 10:19 a.m. at the market price of $6.93, the defendants would have made a profit of $7,000 which, when combined with the $3,325 profit in the account from the beginning of the day, would have left defendants with profits of $10,325.

18. If either the plaintiff or the defendants had liquidated defendants' silver position on July 22, 1982 at 11:02 a.m. or 11:03 a.m. at the market price of $7.00, the profit position in defendant's account would have been $3,325.

19. If either the plaintiff or the defendants had liquidated defendants' silver positions on July 22, 1982 at 11:07 a.m. at the market price of $7.01, the defendants would have had a profit of $2,300.

20. If either the plaintiff or the defendants had liquidated defendants' silver position on July 22, 1982 at 11:14 a.m., or shortly prior to the closing of the market at 11:15 a.m. Pacific Daylight Time, at the market price of $7.06, defendants would have suffered a loss of $2,675 in the account.

21. Neither plaintiff nor defendants elected to liquidate the silver positions in the account prior to the close of the market on July 22, 1982.

22. At the close of business on July 22, defendants still held their position of 19 contracts of September silver short.

23. Mr. Gustafson knew or should have known that defendants were day traders and wanted to avoid holding their positions overnight on July 22, 1982.

24. On July 23 the silver market opened at a price of $7.26 and proceeded to rise in price rapidly for the rest of the day. Mr. Gustafson telephoned defendants at 6:00 a.m. on July 23 and urged them to place a market order or at least enter a stop loss order. Defendants refused.

25. At 8:45 a.m. on July 23, Mr. Gustafson again telephoned defendants and advised them to place a stop loss and to

remind them of the 10:30 a.m. deadline for meeting the margin call.

26. As the price of silver continued to climb on July 23, the equity in defendants' account continued to drop. BACHE was required to make a margin call in defendants' account for $52,000 payable by 10:30 a.m.

27. Defendants failed to meet the margin call as required and at 11:08 a.m. on July 23 BACHE closed out all of defendants' silver positions at the best possible price during the trading day and liquidated defendants' 19 silver contracts at the market price, which resulted in a debit balance in defendants' account of $23,095.

28. To the extent the Findings of Fact herein contain conclusions of law, such conclusions of law are incorporated into the Conclusion of Law section herein. To the extent the conclusions of law herein contain findings of fact, such findings of fact are incorporated in the Findings of Fact section herein.

## CONCLUSIONS OF LAW

1. Federal jurisdiction over the subject matter and venue is proper in this action. 15 U.S.C. § 78aa; 28 U.S.C. § 1332(a).

2. Plaintiff did not convert any of defendants' funds to plaintiff's own use.

■ 3. Considering the contract and the relationship between the parties, access to necessary information, the knowledge that defendants were day traders, and related necessary facts, BACHE had a duty, if defendants failed to close out their positions by the close of the trading day at 11:15 a.m. on July 22, 1982, to liquidate the account. Plaintiff breached said duty.

■ 4. Defendants are liable to BACHE for the $2,675 loss which would have resulted from the liquidation of their account on July 22, 1982. Plaintiff is responsible for bearing the remaining loss suffered when the account was liquidated on July 23, 1982.

■ 5. Defendants, under the written agreement that they would maintain sufficient margin and pay on demand any debit owing in their accounts, had the obligation to deposit good funds in the account to pay for the trades they placed. Defendants breached said obligation.

■ 6. Plaintiff is entitled to judgment against both defendants, jointly and severally, in the sum of $11,000 representing the amount of the checks on which defendants stopped payment. In addition, plaintiff is entitled to judgment against both defendants, jointly and severally, in the sum of $2,675 representing the loss for which defendants are liable had the account been liquidated on July 22, 1982 for a total judgment of $13,675 plus interest thereon at the rate of ten percent per annum from August 24, 1984. Defendants are not entitled to recovery on their counterclaim. Each party is to bear their own costs and attorneys' fees.